UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------- X

LANELL DOWLING,

                                 Plaintiff,    **FIRST AMENDED COMPLAINT**

              -against-

THE CITY OF NEW YORK; LT. RAYMOND
FESTINO; SGT. SCOTT KIENLE, Tax # 925541;
DET. PATRICK SMITH, TAX # 931998; P.O.
KEVIN DEVINE, Shield # 8234 and TAX #
925191; DET. HENRY RIVERO, TAX # 931054;
DET. GASSER; DET. HARMAN; DET. HARVEY;
POLICE OFFICERS JOHN/JANE DOES # 1-10;
WARDEN JOHN/JANE DOE # 1; SUPERVISOR C.O.
JOHN/JANE DOE # 1; C.O. LAKEEMA SAULS;
and C.O. JOHN/JANE DOES # 1-10 the
individual defendant(s) sued individually
and in their official capacities,

                               Defendants.

---------------------------------------- X

12-cv-998-RRM-RER

ECF Case

<u>Jury Trial Demanded</u>

<u>**PRELIMINARY STATEMENT**</u>

      1.    This is a civil rights action in which plaintiff

seeks relief for the violation of plaintiff's rights secured by

42 U.S.C. § 1983; and the First, Fourth, Fifth, Sixth, Eighth,

and Fourteenth Amendments to the United States Constitution.

Plaintiff's claims arise from an incident that arose on or about

April 3, 2010 through June 30, 2011. During the incident, the

City of New York, members of the New York City Police Department

("NYPD"), and New York City Department of Correction ("DOC")

subjected plaintiff to, among other things, excessive force,

false arrest, unlawful search and seizure, retaliation for free speech, fabricated evidence, malicious prosecution, denial of a fair trial, failure to protect, deliberate difference, unlawful strip search, denial of medical care, conspiracy, and implementation and continuation of an unlawful municipal policy, practice, and custom. Plaintiff seeks compensatory and punitive damages, declaratory relief, an award of costs and attorney's fees, pursuant 42 U.S.C. §§ 1988, and such other and further relief as the Court deems just and proper.

## JURISDICTION & VENUE

2.    This action is brought pursuant to 42 U.S.C. § 1983, and the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

3.    Jurisdiction is conferred upon this Court by the aforesaid statutes and 28 U.S.C. §§ 1331 and 1343.

4.    Venue is proper here pursuant to 28 U.S.C. § 1391 because some of the acts in question occurred in New York County, and the City of New York is subject to personal jurisdiction in the Eastern District of New York.

## PARTIES

5.    Plaintiff Lanell Dowling is a resident of the State of New York, Kings County.

6.    At all times referred to herein, defendant City of New York was a municipal corporation organized under the laws of the State of New York, which violated plaintiff's rights as described herein.

7.    Defendant City of New York was the employer of the individual defendants, and is and was at all times relevant to this complaint responsible for the policies, practices and customs of the NYPD and DOC.

8.    At all times alleged herein, defendant Lieutenant Raymond Festino was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

9.    At all times alleged herein, defendant Sergeant Scott Kienle was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

10.    At all times alleged herein, defendant Sergeant Detective Patrick Smith was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

3

11.   At all times alleged herein, defendant Detective Henry Rivero was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

12.   At all times alleged herein, defendant Detective Gasser was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

13.   At all times alleged herein, defendant Detective Harvey was a New York City Police Officer employed with the Latent Print Unit at One Police Plaza, located in New York County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

14.   At all times alleged herein, defendant Detective Harman was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

15.   At all times alleged herein, defendant P.O. Kevin Devine was a New York City Police Officer employed with the 287th Command and/or 67th Precinct, located in Kings County, New York

or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

16.   At all times alleged herein, defendants Police Officers John/Jane Doe # 1-10 were New York City Police Officers employed with the 287th Command and/or 67th Precinct, located in Kings County, New York or other as yet unknown NYPD assignment, who violated plaintiff's rights as described herein.

17.   At all times alleged herein, defendant Warden John/Jane Doe # 1 was a New York City Correction Officer employed with the Otis Bantum Correctional Center, located in East Elmhurst, New York or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

18.   At all times alleged herein, defendant Supervisor Correction Officer John/Jane Doe # 1 was a New York City Correction Officer employed with the Otis Bantum Correctional Center, located in East Elmhurst, New York or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

19.   At all times alleged herein, defendants Correction Officers Lakeema Sauls, and John/Jane Does # 1-10 were New York City Correction Officers employed with the Otis Bantum Correctional Center, located in East Elmhurst, New York

5

or other as yet unknown DOC assignment, who violated plaintiff's rights as described herein.

20.   The individual defendant police and correction officers are sued in their individual and official capacities.

## STATEMENT OF FACTS

### A. Police Officer Misconduct

21.   From March 29, 2010 through June 30, 2011, at and in the vicinity of 120th Avenue and 190th Street, Queens, New York, the 287th Command and/or 67th Precinct, Brooklyn, New York, One Police Plaza, New York, New York, and Kings County Criminal and Supreme Courts, Brooklyn, New York, several police officers, including Lt. Festino, Sgt. Kienle, Sgt. Smith, Det. Rivero, Det. Gasser, Det. Harvey, Det. Harman, P.O. Devine, and Police Officers John/Jane Doe # 1-10, at times acting in concert and at times acting independently, committed the following illegal acts against Lanell Dowling.

22.   On March 29, 2010 four women were robbed separately at gunpoint in Brooklyn, New York in the same general location.  No one was immediately apprehended.

23.   The defendants obtained surveillance DVDs from several stores regarding the robbery pattern, at least one showing a person wearing a hooded sweatshirt.

24.    Thereafter, the defendants, including Sgt. Kienle and P.O. Devine, met with the women regarding the robberies.

25.    The victims generally described being set upon unexpectedly and suddenly and almost simultaneously struck with a pistol during the robberies.  The victims only had a brief amount of time to see the perpetrator.  Further, the perpetrator wore a dark hooded sweatshirt that obscured his face, which also made any identification unreliable.

26.    The defendants had the victims look at photo arrays, but those efforts proved negative.

27.    Thereafter, the defendants, including P.O. Devine and Det. Harvey, with the approval of Sgt. Kienle, made a composite sketch of the subject that was wanted for the robberies.

28.    Upon information and belief, the defendants made the composite sketch in the absence of sufficient safeguards to ensure that inaccurate information from outside an eyewitness' memory would not taint development of a composite.

29.    Upon information and belief, the witnesses visited the sketch artist, defendant Det. Harvey, at the same date and time to make the composite sketch with P.O. Devine. This undermined any fair methodology, allowing the witnesses to

discuss the topic with each other, and not rely on their independent recollection of the event.

30.    Upon information and belief, the defendants failed to follow the usual precautions of separating witnesses, and having each witness individually work with the person compiling the composite.

31.    In addition, the defendants failed to have each witness state, in his/her own words, how accurately the composite reflected how the suspect appeared during the crime.

32.    The defendants also failed to prepare an adequate report regarding the composite procedure.

33.    In addition, the defendants showed the witnesses photographs and/or arrays before developing the composite, which is also improper.

34.    Thereafter, the defendants, including Sgt. Kienle and P.O. Devine, placed the sketch on a wanted card, which is attached hereto at Exhibit 1.

35.    In doing so, the defendants, including Sgt. Kienle and P.O. Devine, sent an email stating that: "The attached file to this e-mail message contains an NYPD artist's rendering of the suspected perpetrator that was supplied by a witness to the scene."  This was a false statement, since the sketch was in fact a composite image made by more than one

witness.  Indeed, the wanted poster repeated this false statement, by failing to state it was a composite.  The defendant officers purposely omitted this fact.

36.   Upon information and belief, composite sketch procedures must be conducted without any undue influence or suggestiveness, including being in the presence of other witnesses, or composing a sketch with another witness.  To do otherwise, creates an unduly suggestive environment and irrevocably taints the composite sketch process.

37.   On or about March 31, 2010, the defendants had the police sketch published, including on Crime Stoppers and Tip Cards.

38.   On April 2, 2010, an anonymous call was placed to Crime Stoppers that in stated, in sum and substance, that "Country" looks like the person that's in the sketch, and provided Country's address.

39.   Thereafter, on April 2, 2010, the defendants, including Lt. Festino, Det. Smith, Sgt. Kienle, and Det. Rivero prepared and presented a suggestive photo array with Lanell Dowling's photograph and showed it to one of victims.  This was improper and highly suggestive as described below.

9

40.    On April 3, 2010, the defendants, including Sgt. Kienle, Det. Smith, and P.O. Devine, went to the Lanell's address, and learned that he lived their with his mother.

41.    The defendants arrived at Lanell's home at 6:00 a.m. and confronted his mother.  Lanell's mother told the defendants that her son was at his girlfriend's house in Queens and gave them the address.  She allowed the defendants to search the entire house, including Lanell's room, and they found no evidence of the robberies, including clothes, weapons or stolen property.

42.    The defendants, including Sgt. Kienle and P.O. Devine, went to Lanell's girlfriend's address and saw Lanell walking outside and approached him.

43.    Once the defendants, Sgt. Kienle and P.O. Devine, confronted Lanell, he was not free to disregard their questions, or walk way or leave the scene.

44.    The defendant officers committed excessive force against plaintiff by maliciously, gratuitously, and unnecessarily grabbing him, throwing him into a gate, and placing excessively tight handcuffs on his wrists.

45.    The defendant officers did not have an objective and/or reasonable basis to use any degree of force against

Lanell, since he was unarmed, compliant, and did not resist arrest.

46.   Plaintiff was physically injured as a result of the excessive use of force.

47.   The defendants then took Lanell to the 67th Precinct for arrest processing and a suggestive lineup where they illegally questioned him while in handcuffs in an attempt to coerce a false confession from him, causing further physical injury and emotional harm.

48.   Lanell tried to explain that they had the wrong person and was not involved in any robberies.  In addition, Lanell told his interrogators that there was video surveillance where he lived that would have corroborated his alibi, but they ignored his alibi, and the recording was erased before it could be obtained.

49.   Moreover, Lanell's cell phone records and activity on MySpace during the times that the robberies occurred showed that Lanell was not near the scene of the crimes.  Lanell tried to explain this to the defendants, including Sgt. Kienle and P.O. Devine, but they disregarded him and failed to investigate, properly document or corroborate his alibi, although they could have easily done so.

50.    Significantly, the defendants seized Lanell's cell phone.

51.    Instead, the defendants then placed Lanell in a highly suggestive and unlawful line-up where he was the only person in the line-up that looked remotely like the composite sketch.  Indeed, at least one of the victims had already been shown Lanell's photograph prior to the line-up, which was improper and unreasonably suggestive.

52.    At one point, the defendants, including Sgt. Kienle and P.O. Devine, demanded that Lanell and all the participants in the suggestive line-up stand up and say: Give me the money!

53.    At one point in the line-up, after Lanell had been ordered to speak, someone other than Lanell was identified, and the defendants yelled at him stop fumbling with his voice so that this person would identify him instead.  This was intentionally suggestive and improperly highlighted and singled out Lanell to the witness.

54.    Indeed, the witness had told the defendant officers that the person who robbed her had a Caribbean accent. Lanell does not have a Caribbean accent, and told the defendants this is how he really spoke, but they ignored him.

55.   Upon information and belief, identification procedures must be conducted without any undue influence or suggestiveness, including: (1) selecting line-up photo array fillers that do not match the suspect or composite sketch, (2) having witnesses in each other's presence of, (3) singling out a suspect during a line-up, or (4) showing a witness a picture of a suspect prior to a line-up.  To do otherwise, creates an unduly suggestive environment and irrevocably taints the identification process.  The defendant did not follow these procedures and committed these acts.

56.   Thereafter, Lanell was transported to Brooklyn Central Booking and arraigned.  In order to cover up their illegal actions, the defendant officers, pursuant to a conspiracy, falsely and maliciously told the Kings County District's Office that Lanell had committed various crimes, including armed robbery.

57.   Lanell was sent to jail at Otis Bantum correctional Center (Rikers Island) with a $100,000 bail, and incarcerated for seven months.

58.   Lanell was later indicted based on the suggestive line-up and the intentional misconduct of the defendants described herein.

13

59.   Upon information and belief, the defendants purposely omitted from the grand jury, the fact that Lanell was initially named as someone who merely looked like the composite sketch.

60.   Upon information and belief, the defendants purposely failed to inform the grand jury that Lanell's cell phone records established that he was at his apartment building when the robberies took place.

61.   Indeed, Lanell's T-Mobile cell site records (which show a particular location of a cell phone call) revealed that during the robberies, Lanell's cell phone was at the same cell tower located across the street from his home. Lanell's phone records also showed that he received phone calls and text messages during the time span of the robberies and could not have committed the robberies.   The defendants ignored these facts, purposely turning a blind eye to Lanell's clear evidence of innocence.

62.   Indeed, Lanell's girlfriend had informed the defendants, including Sgt. Smith, on the date of Lanell's arrest that she had been on the phone with him and could not have done the robberies, but the defendants also ignored this alibi.

63.   Moreover, the defendants, including Sgt. Kienle and P.O. Devine cannot claim that this was not a critical part

14

of their investigation.  Indeed, on March 30, 2010, the
defendants requested subpoenas for the cell phone records
regarding the victim's stolen phones for the express purpose of
determining if the stolen phones were being used, so as to aid
in their locating the perpetrator.  These defendants also
requested an order authorizing the installation and use of a pen
register and trap and trace device (including caller
identification and cell sites) to help locate the perpetrator.
On April 1, 2010, they followed up their requests for these
records.

　　　　64.  Additionally, Lanell's MySpace activity also
revealed that he was on-line posting material when the robberies
occurred.  The defendants, including Sgt. Kienle and P.O.
Devine, were informed of this, but omitted this information from
the grand jury to obtain a false indictment.

　　　　65.  In addition, the defendants, including Sgt.
Kienle and P.O. Devine, did not seize any weapon or firearm,
contraband, or evidence from Lanell's person or residence
regarding the robberies, including any clothes matching those
worn by the real perpetrator.  Among the items that were stolen
were yellow gold wedding and engagement rings and cell phones,
which were distinctive and identifiable, but they were not found
with respect to Lanell.

66.   Indeed, the defendants, including Sgt. Kienle and P.O. Devine, knew this was also a critical fact because on March 31, 2010, they had other police officers canvas pawn shops to determine if any rings matching the victims' stolen property had been pawned.  Again, upon information and belief, the defendants, including Sgt. Kienle and P.O. Devine, purposely failed and omitted this information from the grand jury to obtain a false indictment.

67.   Further, the defendants did not collect any latent fingerprints or D.N.A. evidence from the robbery scenes linking Lanell to the crimes.  Upon information and belief, this fact was also not told to the grand jury.

68.   The defendants, including Sgt. Kienle and P.O. Devine, closed the case on April 4, 2010, purposely misstated that there were no outstanding perpetrators or traceable property regarding the investigation.

69.   On or about July 25, 2010, while Lanell was in custody at Riker's Island another robbery was committed in the same precinct where the other robberies occurred.  The robbery was at gunpoint and resulted in a homicide.

70.   As part of that investigation, upon information and belief, the defendant officers, including Sgt. Kienle and P.O. Devine, investigated that case and used a virtually

16

identical sketch regarding that assailant.  The sketch is attached at Exhibit 2.  The sketches are of an identical suspect, except that the later composite is depicted wearing a hat.

71.  So by no later than July 25, 2010, it was clear to the defendant officers, including Sgt. Kienle and P.O. Devine, that the actual suspect of the earlier robberies was continuing to commit robberies in the same precinct area, since the composite sketch of the perpetrator of the robbery homicide was identical to the earlier composite sketch.

72.  The defendants' flawed and purposely misleading investigation, and intentional misconduct had apparently allowed the real perpetrator to remain free, while Lanell, an innocent man, languished trapped in jail for crimes he did not commit.

73.  Lanell's defense lawyer brought the issue to the defendant officers' attention, via the District Attorney's Office, but they still refused to admit their gross and intentional misconduct, including the fact that they were still looking for the real perpetrator of the earlier robberies.

74.  Nevertheless, Lanell's bail was reduced by the Supreme Court in October 2010 to $20,000, in spite of the fact the application was opposed, and Lanell was released, allowing him to return to his life, and eventually the criminal case

against him was dismissed in its entirety, terminating in his favor on or about June 30, 2011.

## B. Correction Officer Misconduct

75.    On or about April 4, 2010 through October 2010, at Otis Bantum Correctional Center, East Elmhurst, New York (O.B.C.C.) and other DOC correction centers, correction officers and supervisors, including upon information and belief, defendants Warden John/Jane Doe # 1, Supervisor John/Jane Doe # 1, and C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10, at times acting in concert and at times acting independently, committed the following illegal acts against Lanell.

76.    On or about April 4, 2010 until his release in October 2010, while at O.B.C.C and DOC correction centers, Lanell was subjected to DOC's unlawful policy of strip-searching detainees in public regardless of reasonable suspicion or probable cause by defendants Warden John/Jane Doe # 1, Supervisor John/Jane Doe # 1, and C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10, at his initial intake at the O.B.C.C., on or about April 4, 2010, and thereafter when directed by the defendants.  Lanell was forced to squat and expose his private areas in front of numerous non-essential DOC employees and detainees.

18

77.    Thereafter, on or about April 5, 2010, defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 intentionally disclosed to a gang of inmates that Lanell has been incarcerated for allegedly robbing four female victims.

78.    Indeed, that morning Lanell was confronted by a gang member, and shown a newspaper article that defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 had given to the gang.  This was done in violation of DOC policy that mandates that articles involving detainees be edited from any disseminated newspapers and not provided to detainees.

79.    As the day progressed, at lunch and in the day room, the gang members followed, harassed, and taunted Lanell. Defendants C.O. Lakeema Sauls, and John/Jane Does # 1-10 ignored this conduct.

80.    Thereafter, as Lanell was trying to go to his cell, a group of inmates savagely attacked him.

81.    Defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 remained in a secure area during the attack.

82.    Defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 did not try to prevent the attack, stop the attack, intervene and protect Lanell, use a radio, or pull an emergency alert transmitter to summon assistance for almost a minute while the attack went on.

83.    Defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 failed to protect Lanell although they had duty as correction officers to protect Lanell from being physically assaulted by other detainees.

84.    Eventually, a correction officer came and the attack ended.

85.    When the gang finished their attack, Lanell had serious injuries, including bruises and contusions.  However, rather than take him to the infirmary, defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 detained Lanell in the O.B.C.C.'S intake area without medical care.  This was in violation of DOC policy, which requires the victim's of inmate assaults to be examined and injuries documented.  The defendants delayed providing Lanell with medical treatment to cover up the attack, and then had him transferred from the unit.

86.    Prior to and on or about April 5, 2010, defendants Warden John/Jane Doe # 1, Supervisor John/Jane Doe # 1, and C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 knew that Lanell was incarcerated under conditions posing a substantial risk of serious harm to him.  Nevertheless, the defendants acted with deliberate indifference to Lanell's safety.

20

87.   Defendants Warden John/Jane Doe # 1, Supervisor John/Jane Doe # 1, and C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 acted with deliberate indifference because they were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed towards Lanell, and the defendants drew this inference.

88.   Prior to the attack, defendants Warden John/Jane Doe # 1, Supervisor John/Jane Doe # 1, and C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 were aware that there existed a pervasive pattern of continued harassment, theft, extortion and assaults against other detainees by gangs of detainees.

89.   At times, prior to the attack, the above-mentioned gang harassment took the form of verbal threats towards other detainees, in the presence of, under the observation, with the approval, and with the assistance of the defendant correction officers.

90.   At times, prior to the attack, the above-mentioned gang assaults took the form of physically attacking detainees (who were selected for punishment or intimidation by correction officers, who failed to surrender their commissary, property, or phone access to the gang members, who asked for their stolen property to be returned, or who complained about the gang's abuses) in the presence of, under the observation,

21

with the approval, and with the assistance of the defendant officers.

91.   Prior to the attack, upon information and belief, defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 conspired with the gang that controlled O.B.C.C. with the purpose of having the gang run the cell area on behalf of the defendant officers.

92.   At times, prior to the attack, upon information and belief, defendant C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 fraternized with gang members at O.B.C.C.

93.   At times, prior to the attack, upon information and belief, defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 protected gang members at O.B.C.C. from departmental investigations, disciplinary measures, and apprehension for committing crimes.

94.   Here, defendants C.O. Lakeema Sauls, and C.O. John/Jane Does # 1-10 provided gang members with specific information about Lanell, namely a newspaper article about him, to cause a confrontation and attack.  This act was intentional and caused the gang attack.  In addition, the defendants covered up the attack for the gang by moving Lanell to intake rather than an infirmary to document his injuries and having him transferred.  This suited the illicit goals of the defendants,

22

including their gross pattern of intentional misconduct with gang members.

### C. General Allegations

95.   The aforesaid events are not an isolated incident.  Defendant City of New York is aware (from lawsuits, investigations, notices of claim and complaints) that many of the NYPD's officers are insufficiently trained on the proper way to investigate, prosecute, prepare evidence, search arrestees or detainees, and treat innocent and/or uninvolved individuals who are found at an incident scene and/or investigation location.

96.   Defendant City of New York is also aware (from lawsuits, investigations, notices of claim and complaints) that of DOC's officers are insufficiently trained on the proper way to protect detainees, perform strip searches, provide medical care, to interact with detainees, and how not to act with deliberate indifference.

97.   Defendant City of New York is further aware that such improper training and supervision has often resulted in a deprivation of civil rights.  Despite such notice, the City of New York has failed to take corrective action.  This failure caused the defendants in the present case to injure plaintiff, violate the law, and violate the plaintiff's rights.

98.   Moreover, defendant City of New York was aware prior to the incident that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition to be employed.  Despite such notice, defendants has retained these individuals, and failed to adequately train and supervise them.

99.   At all times defendant City of New York by the NYPD and DOC, and its agents, servants and/or employees, carelessly, and recklessly trained the individual defendants for the position of police or correction officers.

100.  At all times defendant City of New York by the NYPD and DOC, and its agents, servants and/or employees, carelessly, and recklessly supervised, controlled, managed, maintained and inspected the activities of the individual defendants.

101.  At all times defendant City of New York by the NYPD and DOC, and its agents, servants and/or employees caused, permitted and allowed the individual defendants to act in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

102.  At all times defendant City of New York by the NYPD and DOC, and its agents, servants and/or employees carelessly, and recklessly retained in its employ, the

24

individual defendants, who were clearly unfit for their positions, who acted in an illegal, unprofessional, and/or deliberate manner in carrying out their official duties and/or responsibilities.

103.    The occurrence(s) and injuries sustained by plaintiff, were caused solely by, and as a result of the malicious, reckless, and/or intentional conduct of defendant City of New York, and the NYPD and DOC, and its agents, servants and/or employees, as set forth above, without provocation on the part of the plaintiff contributing thereto, specifically, the reckless manner in which said defendant hired, trained, supervised, controlled, managed, maintained, inspected and retained the individual defendants.

104.    The individual defendants acted in concert committing the above-described illegal acts toward plaintiff.

105.    The plaintiff did not resist arrest at any time during the above incidents.

106.    The plaintiff did not violate any law, regulation, or administrative code; commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

107.    The individual defendants did not observe plaintiff violate any law, regulation, or administrative code;

commit any criminal act; or act in a suspicious or unlawful manner prior to or during the above incidents.

108.  At no time prior to, during or after the above incidents were the individual defendants provided with information, or in receipt of a credible or an objectively reasonable complaint from a third person, that plaintiff had violated any law, regulation, or administrative code; committed any criminal act; or acted in a suspicious or unlawful manner prior to or during the above incidents.

109.  The defendants acted under pretense and color of state law and within the scope of their employment.  Said acts by said defendants were beyond the scope of their jurisdiction, without authority or law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of their rights.

110.  As a direct and proximate result of defendants' actions, plaintiff experienced personal and physical injuries, pain and suffering, fear, an invasion of privacy, psychological pain, emotional distress, mental anguish, embarrassment, humiliation, and financial loss.

## FIRST CLAIM

### (UNLAWFUL SEARCH AND SEIZURE UNDER FEDERAL LAW)

112.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

113.  Defendants unlawfully stopped and searched plaintiff without reasonable suspicion, a warrant, or consent.

114.  Accordingly, defendants are liable to plaintiff for unlawful search and seizure under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## SECOND CLAIM

### (FALSE ARREST UNDER FEDERAL LAW)

115.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

116.  Defendants falsely arrested plaintiff without consent, an arrest warrant, a lawful search warrant, probable cause, or reasonable suspicion that plaintiff had committed a crime.

117.  Accordingly, defendants are liable to plaintiff for false arrest under 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## THIRD CLAIM

### (EXCESSIVE FORCE)

118.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

119.  The individual defendants' use of force upon plaintiff, as described herein, and the individual defendants' failure to intervene, was objectively unreasonable.

120.  Accordingly, defendants are liable to plaintiff for using unreasonable and excessive force, pursuant to 42 U.S.C. § 1983; and the Fourth and Fifth Amendments to the United States Constitution.

## FOURTH CLAIM

### (RETALIATION)

121.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

122.  Plaintiff exercised free speech and constitutional rights during the incident and investigation by, among other things, asserting his alibi and demanding that the individual defendants explain the basis for their unlawful actions.

123.  In addition, the plaintiff informed the defendants that he knew that they had reused the composite sketch, exposing their gross misconduct.

28

124.   Plaintiff's use of free speech and exercise of his constitutional rights was a motivating factor in the individual defendants' decision to falsely arrest and maliciously prosecute plaintiff.

125.   Accordingly, the individual defendants are liable to plaintiff under the First Amendment to the United States Constitution.

## FIFTH CLAIM

### (MALICIOUS PROSECUTION CLAIM UNDER FEDERAL LAW)

126.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

127.   The individual defendants are liable to plaintiff for malicious prosecution because, pursuant to a conspiracy and acting with malice, the defendants initiated malicious prosecution(s) against plaintiff by knowingly, intentionally, and maliciously providing false statements to prosecutors and/or the court(s), which alleged plaintiff had committed various crimes, purposely omitting and suppressing plaintiff's alibi, hiding the profound faults and deficiencies in their investigation, intentionally placing the plaintiff in a suggestive line-up, and purposely continuing with a prosecution against the plaintiff even though they were still searching for

the true robbery suspect as shown by their reuse of the composite sketch.

128.   The individual defendants lacked probable cause to believe the above-stated malicious prosecution(s) could succeed.

129.   The individual defendants acted to cover up their illegal and unconstitutional conduct by initiating and continuing the above-stated malicious prosecution(s), including covering up the fact that they were still looking for the true perpetrator and had falsely arrested the wrong person, in part, to save their own reputations and cover up their gross misconduct.

130.   The above-stated malicious prosecution(s) caused a sufficient post-arraignment liberty restraint on plaintiff.

### SIXTH CLAIM

### (FABRICATED EVIDENCE)

131.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

132.   The individual defendants are liable to plaintiff because they intentionally conspired to fabricate evidence against him, including omitting and/or manipulating evidence that corroborated his alibi, gave and allowed fabricated and

suggestive testimony to be presented, and concealed exculpatory material depriving him of liberty without due process of law.

133.    The individual defendants were on notice that creating fabricated evidence, or suppressing true facts of innocence (including that they were still searching for the actual perpetrator), is a clear violation of law because it well established that police officers who knowingly use false evidence to obtain a conviction act unconstitutionally, and this is redressable in an action for damages under 42 U.S.C. § 1983.

134.    Furthermore, the individual defendants violated the law by making false statements of fact in a certification for a determination of probable cause and/or a conviction.

135.    Furthermore, the individual defendants violated the law by failing to gather and instead suppressing exculpatory evidence, creating a suggestive identification line-up and sketch, and manipulating evidence to obtain an indictment and conviction, while performing the function of investigators.

## SEVENTH CLAIM

### (DENAIL OF A FAIR TRIAL)

136.    Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

137.    The individual defendants are liable to plaintiff because they intentionally created false information likely to

31

influence a fact finder's or jury's decision, including omitting and/or manipulating evidence showing his alibi, fabricating testimony, creating a suggestive identification line-up and sketch, and the concealing exculpatory material (i.e. that the defendants were still looking for someone matching the composite sketch), and forwarded that information to prosecutors, a grand jury, and/or court, and presented that information to a jury, thereby violating plaintiff's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983.

## EIGHTH CLAIM

### (UNLAWFUL STRIP-SEARCH)

138.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

139.  Defendants strip-searched plaintiff, in public which is per se unreasonable, without probable cause or reasonable suspicion, therefore they are liable to plaintiff.

## NINTH CLAIM

### (42 U.S.C. § 1983 CONSPIRACY)

140.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

141.  Defendants are liable to plaintiff because they agreed to act in concert, at times with each other and at times

32

with civilian, to inflict an unconstitutional injury; and committed an overt act done in furtherance of that goal causing damage to plaintiff.

### TENTH CLAIM

#### (DENIAL OF MEDICAL CARE)

142.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

143.   Defendants are liable to plaintiff because they ignored plaintiff's need for medical treatment for a serious medical issue and/or injury, or delayed such treatment, and the harm occasioned by such an act is redressable under the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. § 1983.

### ELEVENTH CLAIM

#### (DELIBERATE INDIFFERENCE TO SAFETY, FAILURE TO PROTECT, EXCESSIVE FORCE)

144.   Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein

145.   The defendants exercised deliberate indifference and cruelty, extreme recklessness, and intent to a known and probable risk to plaintiff by failing to take remedial action, and allowing a dangerous environment to become so pervasive at its DOC detention centers by allowing and permitting inmate gangs to injure and violate other detainees with the approval,

33

support, agreement, and consent of correction officers and officials.

146.  The aforesaid conduct by the City of New York violated plaintiff's rights under 42 U.S.C. §§ 1983 and the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

## **TWELFTH CLAIM**

### **(MONELL CLAIM)**

147.  Plaintiff repeats and realleges all the foregoing paragraphs as if the same were fully set forth at length herein.

148.  Defendant City of New York, through a policy, practice and custom, directly caused the constitutional violations suffered by plaintiff.

149.  Upon information and belief, defendant City of New York, at all relevant times, was aware that the defendants were unfit officers who have previously committed the acts alleged herein, have a propensity for unconstitutional conduct, or have been inadequately trained.

150.  Nevertheless, defendant City of New York exercised deliberate indifference by failing to take remedial action.  The City failed to properly train, retrain, supervise, discipline, and monitor the individual defendants and improperly retained and utilized them.  Moreover, upon information and

34

belief, defendant City of New York failed to adequately investigate prior complaints filed against the individual defendants.

151. Further, defendants City of New York was aware prior to the incident that the individual defendants (in continuation of its illegal custom, practice and/or policy) would commit the illegal acts described herein.

152. In addition, the following are municipal policies, practices and customs: (a) arresting and prosecuting innocent individuals; (b) fabricating and testimony evidence against individuals; (c) retaliating against individuals who engage in free speech and assert their constitutional rights; (d) acting with deliberate indifference to a risk of serious injury; (e) conducting unlawful identification procedures; (f) unlawfully strip searching individuals; (e) failing to protect

individuals; and (f) covering up misconduct.

> **WHEREFORE,** plaintiff demands a jury trial and the

following relief jointly and severally against the defendants:

    a.    Compensatory damages in an amount to be

          determined by a jury;

    b.    Punitive damages in an amount to be determined by

          a jury;

    c.    Costs, interest and attorney's fees, pursuant to

          42 U.S.C. § 1988; and

    d.    Such other and further relief as this Court may

          deem just and proper, including injunctive and

          declaratory relief.

DATED:   Brooklyn, New York
         March 1, 2013


                        MICHAEL O. HUESTON, ESQ.
                        *Attorney for Plaintiff*
                        16 Court Street, Suite 3301
                        Brooklyn, New York 11241
                        (718) 246-2900
                        mhueston@nyc.rr.com


                        ____s/_____
                        MICHAEL HUESTON

                        Jay Schwitzman, Esq.
                        *Attorney for Plaintiff*
                        26 Court Street, Suite. 1406
                        Brooklyn, New York 11242
                        schwitzman@aol.com